IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARTY M. WESTPHAL                                        PLAINTIFF

        v.                        Civil No. 2:15-cv-02005

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                           DEFENDANT

### MEMORANDUM OPINION

Plaintiff, Marty Westphal, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his claim for supplemental security income ("SSI") under the provisions of Title XVI of the

Social Security Act ("Act").  The Parties have consented to the jurisdiction of a magistrate judge to

conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a

final judgment, and conducting all post-judgment proceedings.  (ECF No. 6).[1]  Pursuant to this

authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this

matter.

I.      **Background:**

Plaintiff protectively filed his application for SSI on January 17, 2012, alleging an onset date

of September 1, 2007, due to back problems.  (Tr. 9, 136).  Plaintiff's application was denied initially

and on reconsideration.  An administrative hearing was held on May 29, 2013, at which Plaintiff

---

[1] The docket numbers for this case are referenced by the designation "ECF No. __."  The transcript pages
for this case are referenced by the designation "Tr."

appeared with counsel and testified.  (Tr. 25-41).  A vocational expert ("VE") was also present and testified.  (Tr. 31-32).

On October 18, 2013, the Administrative Law Judge ("ALJ") entered an unfavorable decision.  (Tr. 9-17).  In this decision, the ALJ determined Plaintiff's low back pain with osteoarthritis was a severe impairment.  (Tr. 11, Finding 2).  After reviewing all of the evidence presented, however, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment listing.  (Tr. 12-13, Finding 3).

The ALJ next evaluated Plaintiff's subjective complaints and determined his RFC.  The ALJ first evaluated Plaintiff's subjective complaints and found he was not entirely credible.  (Tr. 14-15).  The ALJ then found Plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium work.  (T. 13, Finding 4).

With the help of the VE, the ALJ determined Plaintiff could perform his past relevant work ("PRW") as a general office clerk.  (Tr. 16, Finding 5).  The ALJ then concluded Plaintiff was not disabled.  (Tr. 17, Finding 6).

On October 24, 2013, Plaintiff requested the Appeals Council review the ALJ's unfavorable decision, which denied the request on November 20, 2014.  (Tr. 1-4).  On January 7, 2015, Plaintiff filed the present appeal.  (ECF No. 1).  The Parties consented to the jurisdiction of this Court on January 8, 2015. (ECF No. 6).  Both Parties have filed appeal briefs, and the case is ready for decision.  (ECF Nos. 11, 12).

II.   **Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance, but it is enough a reasonable mind would find it adequate to support the Commissioner's decision.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record to support a contrary outcome, or because the Court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

To determine whether a claimant suffers from a disability, the Commissioner uses a five-step sequential evaluation.  She determines: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform his PRW; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.  20 C.F.R. §§ 404.1520(a)-(f)*; Cox*, 160 F.3d at 1206.  The fact finder only

considers Plaintiff's age, education, and work experience in light of his RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920.

## III.   <u>Discussion</u>:

Plaintiff argues the ALJ erred by: (1) failing to develop the record; (2) not including additional severe impairments; (3) formulating an RFC that was not based on substantial evidence; and (4) finding Plaintiff could perform his past relevant work.  (ECF No. 11 at 9-17).

### A. Development of the Record

Plaintiff believes the ALJ should have recontacted Dr. Patricia Walz, a consulting psychologist, and ordered a consultative exam to investigate his carpal tunnel syndrome ("CTS"). (ECF No. 11 at 9-11).

The ALJ has a duty to fully and fairly develop the record, even when a Plaintiff is represented by counsel. If a physician's report of a claimant's limitations are stated only generally, the ALJ should ask the physician to clarify and explain the stated limitations.  *See Vaughn v. Heckler*, 741 F. 2d 177, 179 (8th Cir. 1984).  An ALJ  is required to order medical examinations and tests if the existing medical records do not provide sufficient medical evidence to determine the nature and extent of a claimant's limitations and impairments.  *See Barrett v. Shalala*, 38 F. 3d 1019, 1023 (8th Cir. 1994).  The ALJ must develop the record until the evidence is sufficiently clear to make a fair determination.  *See Landess v. Weinberger*, 490 F. 2d 1187, 1189 (8th Cir. 1974).  In addition, a claimant must show not only that the ALJ failed to fully and fairly develop the record, but he must also show he was prejudiced.  *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Dr. Walz examined Plaintiff in July 2012. During the exam, Plaintiff shared he had not been treated for a mental condition, other than a three day stay at Vista Health clinic for depression in

-4-

February 2012, and was not taking any medications for his anxiety or depression. (Tr. 357-358). According to Plaintiff, he could perform his daily activities without problems, and his depression had never affected his ability to work. (Tr. 357-359). Dr. Walz determined Plaintiff had depression with an "adjustment reaction with depressed mood related to separation and divorce." (Tr. 360). Plaintiff also exhibited passive dependent personality traits, but Dr. Walz indicated Plaintiff had no problems with adaptive functioning. (Tr. 360). She opined Plaintiff had fair social skills, although he "pulled for sympathy" during the exam, functioned at the average to high average range of intelligence, showed fair attention and concentration, and could persist on tasks and complete work tasks in an acceptable time frame. ( Tr. 361).

Although Dr. Walz did not submit a mental RFC assessment, her report included her opinions on Plaintiff's functioning and work-related limitations, and she identified the basis for her opinions. While she highlighted passive dependent personality traits in Plaintiff's behavior, she opined his "social skills were fair," and noted Plaintiff's mental state had never affected his ability to work. (Tr. 357, 361).

An ALJ is only required to recontact a physician to clarify an opinion if a critical issue is undeveloped. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). In addition to Dr. Walz's examination and opinions, the record included Plaintiff's treatment notes, an evaluation from Vista Health, and the opinions of the non-examining physicians. (Tr. 303-318, 367-383, 399). This was a sufficient basis for the ALJ to evaluate Plaintiff's mental conditions.

Similarly, the record contained enough evidence for the ALJ to assess Plaintiff's physical limitations without ordering an additional consultative exam. The record included x-rays and an MRI of Plaintiff's spine, examinations over several years, evidence from Dr. Michael Wolfe, who

treated Plaintiff for back pain, and the physical assessments from the non-examining consultants. (Tr. 256, 298-291, 386-392, 404). Although Dr. Wolfe diagnosed Plaintiff with CTS in April 2011, he noted Plaintiff's CTS symptoms were "relatively mild," and Plaintiff was not treated for CTS during the relevant time period. (Tr. 270). Plaintiff testified he had pain and numbness in his hands, but he did not identify CTS as a basis for disability in his application, and did not discuss CTS at the hearing. (Tr. 33-34, 39-40). An ALJ is not required to investigate an impairment not presented at the time of the application for benefits or discussed at the hearing. *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir. 2010); *see also McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment . . .").

Based on the foregoing, the undersigned finds no basis for remand on this issue.

**B. Severe Impairments**

Plaintiff believes the ALJ should have found his mental conditions and CTS were severe impairments. (ECF No. 11 at 11-12).

A claimant suffers from a severe impairment if the impairment is more than slight and it affects the claimant's ability to complete his basic work activities. *See Householder v. Bowen*, 861 F.2d 191, 192 n.1 (8th Cir. 1988). The Supreme Court has also held that a claimant does not suffer from a severe impairment where the claimant only suffers from "slight abnormalities that do not significantly limit any 'basic work activity.'" *See Bowen v. Yuckert*, 482 U.S. 137, 155 (1987) (O'Connor, S., concurring); *see also Brown v. Bowen*, 827 F.2d 311, 311-12 (8th Cir. 1987) (adopting Justice O'Connor's language from *Bowen v. Yuckert*).

The standard for determining whether a claimant suffers from a severe impairment is low.

*See Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007).  If the ALJ errs by finding a severe impairment not severe, the ALJ's disability determination must be reversed and remanded. *Id*.

The ALJ addressed Plaintiff's mental impairments, but determined they were not severe because Plaintiff improved on Paxil when he briefly sought treatment, and he rejected follow-up care.  (Tr. 11, 321).  The ALJ also referenced Plaintiff's admission his mental problems did not affect his ability to work, his statement that he did not need counseling, and notes from Vista Health, which showed Plaintiff's depression resolved after limited treatment.  (Tr. 11-12).

Plaintiff received three days of in-patient treatment at Vista Health in February 2012 for anxiety and depression, but after treatment he "was in a euphoric mood, friendly, cooperative, interacting with other patients . . .," and he "stated he was no longer the least bit depressed . . . [and] experienced a significant improvement in mood" from Paxil.  (Tr. 303-304, 306).  Following his treatment at Vista Health, Plaintiff considered care at Western Arkansas Guidance and Counseling, but canceled his first appointment because "he was very happy and didn't need to come in."  (Tr. 321).  In March 2012, Plaintiff was treated at Mercy Hospital, and discharge notes show he was in a good mood and had no anxiety.  (Tr. 330, 335, 337).  In June 2012, Plaintiff reported he experienced some depression to Dr. Walz, but shared he had never sought counseling, was not taking any psychiatric medications, and his mental conditions had never affected his ability to work.  (Tr. 357-358).  Finally, Plaintiff submitted two function reports and a third party function report, which stated he did not have any mental limitations from anxiety or depression.  (Tr. 154-156, 176-177, 203-204).

The evidence indicates Plaintiff suffered from situational depression, but often had a positive mood, did not feel the need to seek treatment, and he believed his mental conditions did not limit

-7-

his ability to work.  Additionally, Plaintiff did not allege depression or anxiety as a basis for disability on his application.  This was substantial evidence for the ALJ to conclude Plaintiff's mental impairments were not severe.  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-1040 (8th Cir. 2001); *see also Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (listing the factors to consider when determining a claimant's mental impairments).

Plaintiff's hand pain and numbness were also addressed by the ALJ, who identified inconsistencies between Plaintiff's testimony about his hand condition and his statements to physicians, and highlighted Dr. Wolfe's assessment that Plaintiff's CTS symptoms were relatively mild and could be treated by a hand splint worn at night.  (Tr. 12, 270).  Following Dr. Wolfe's diagnosis of mild CTS, Plaintiff did not complain of hand problems to physicians, and he had 4/5 strength in his extremities at an exam in March 2012.  (Tr. 276-291, 334, 409-410).  Dr Wolfe's assessment and Plaintiff's failure to seek treatment for CTS suggests the condition was not severe. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

Accordingly, the undersigned finds the ALJ's determination of Plaintiff's severe impairments is based on substantial evidence.

**C. RFC**

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC.  20 C.F.R. § 404.1520(a)(4)(iv).  The RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir.2004).  The ALJ should consider "'all the evidence in the record' in determining the RFC, 'including the medical records, observations of treating physicians and others, and an individual's own description of her limitations.'" *Id*. (quoting

-8-

*Krogmeier v. Barnhart*, 294 F.3d 1019 (8th Cir.2002).  Plaintiff has the burden of producing documents and evidence to support his claimed RFC.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Cox*, 160 F.3d at 1206.

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports the RFC determination.  *Lauer v. Apfel*, 245 F.3d 700, 703–04 (8th Cir.2001). This Court is required to affirm the ALJ's RFC determination if the determination is supported by substantial evidence on the record as a whole.  *See McKinney v. Apfel*, 228 F.3d 860, 862 (8th Cir.2000).

There is some evidence in the record to suggest Plaintiff was limited in his ability to bend, twist, and stoop.  X-rays of Plaintiff's spine in 2011 showed some degenerative changes, and Plaintiff complained of pain in postural positions to Dr. Wolfe in 2010 and 2011. (Tr. 256, 268, 278, 289, 291).  An MRI from 2010, however, showed only minimal degenerative changes and no significant stenosis. (Tr. 282).  In April 2011, Dr. Wolfe noted Plaintiff's back condition was not bad enough to require an injection. (Tr. 270).  At a follow-up in June of 2011, Plaintiff reported increased pain, and Dr. Wolfe noted Plaintiff may be having "some mild spinal stenosis." (Tr. 268). He prescribed Arthrotec and performed a L5-S1 trigger point injection. (Tr. 268).  In September 2011, Dr. Wolfe administered a trigger point injection because Plaintiff reported his back pain had increased in the past week. (Tr. 291).

Plaintiff did not seek any treatment for his back pain after September 2011.  (Tr. 291).  In April 2012, Plaintiff was treated at Mercy Hospital where chronic low back pain was noted as a past diagnosis, but Plaintiff's exam was normal. (Tr. 351-353).  When Plaintiff re-established medical

care at the Good Samaritan Clinic in February 2013, chronic low back pain was noted, but Plaintiff was not prescribed any medications or treatment. (Tr. 408-410). As the ALJ addressed, Plaintiff's daily activities included household chores such as dusting, vacuuming, mowing the law, and walking for exercise, and Dr. Walz noted Plaintiff displayed no pain behavior during the exam other than grunting "getting in an out of chairs." (Tr. 15-16, 359). Additionally, the non-examining consultants opined Plaintiff could perform medium work. (Tr. 386-392, 404).

The ALJ reasonable concluded Plaintiff's mental limitations and CTS did require additional RFC accommodations because they were not severe impairments and did not impose more than slight limitations. While there was evidence from before the relevant time period Plaintiff's back pain limited his postural abilities, Plaintiff's conservative treatment, daily activities, and the absence of treatment for back pain during the relevant time period was substantial evidence for the ALJ to conclude he could perform medium work without additional accommodations. *See McCoy v. Astrue,* 648 F.3d 605, 615-616 (8th Cir. 2011) (stating ALJ's decision not to include postural limitations was based on substantial evidence even though Plaintiff complained of back pain at a visit during the relevant time period, and a non-examining consultant opined Plaintiff had postural limitations).

Based on the foregoing, the undersigned finds the ALJ's RFC determination is based on substantial evidence.

### D. Past Relevant Work

Plaintiff's final argument is the ALJ did not ascertain the specific job demands of his past work. (Doc. 11 at 16).

At step four, the burden of persuasion in on the claimant. *Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004). While the ALJ may consult a VE, VE testimony is not required for the ALJ

to determine Plaintiff can perform his past relevant work. *Hill v. Colvin*, 753 F.3d 798, 801 (8th Cir. 2014). At the hearing, Plaintiff testified about the characteristics of his past relevant work at Blaylock Heating and Air. (Tr. 29-31). The ALJ then asked the VE about the exertional demands and skill requirements of Plaintiff's work at the company. (Tr. 31). In response, the VE testified Plaintiff's work was as a general office clerk at the light, semi-skilled level. ( Tr. 31-32). By consulting a VE, the ALJ sufficiently identified the requirements of Plaintiff's past relevant work. *Eichelberger*, 390 F.3d at 592.

**IV.**   **Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**Dated this 28th day of October 2015.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE